This is a child custody case.
In 1978, the juvenile court awarded to the Wagnons the temporary custody of a child. The child's father died before that time. The mother of the child and Mrs. Wagnon are sisters. While legal proceedings occurred in the interim, in February 1982 the mother filed a petition re-seeking her daughter's custody. The case was transferred to the circuit court, where extensive evidence was heard ore tenus before that court on at least five different *Page 185 
occasions. The entire record consists of four volumes. On November 8, 1982, only three days after the conclusion of the presentation of the evidence, a final judgment was entered by the circuit court whereby the temporary custody of the child to the Wagnons was revoked and full care, custody, and control of the girl, who was then fourteen years of age, was restored to her natural mother. While the Wagnons perfected their appeal in December 1982, this case was not submitted to this court for our consideration until June 11, 1984. We affirm.
We only briefly summarize some of the evidence in our required effort to ascertain if credible evidence supports the trial court's judgment.
There was evidence that the 1978 temporary custody of the juvenile court was rendered by consent and that the mother only consented to the Wagnons' having the girl's custody until the end of the 1978-1979 school term. The mother had moved from Gadsden to Huntsville, and the Wagnons resided in Gadsden, where the child attended school.
After the death of the child's father, the mother was distraught, but her life is now in good order. Since the time of the temporary order, she has remarried. Her economic situation has vastly improved, with a present family monthly income in excess of $2,000. Presently, neither she nor her husband drinks even socially. In short, there was evidence that she has rehabilitated herself and is a fit and proper mother to have custody of her daughter.
Some of the evidence was to the effect that the Wagnons neglected the child, that they did not properly supervise her, that they were very permissive, that they allowed the girl to go anywhere that she desired when she was only twelve or thirteen years of age, and that they have been a bad influence upon the child, who now tells untruths and exaggerates situations in order to gain her own way. That evidence was controverted.
The trial court allowed the child to spend all but three weeks of the 1982 summer with her mother in Huntsville. Since August 1982, the girl has attended school in Huntsville, where she excels in her work and has established new friendships. Family members testified that the child should be with her mother.
There was testimony that, since she has been in Huntsville with her mother, the daughter has adapted well, that her moods are excellent, that she is apparently happy and contented there, that they have established a mother-child relationship, and that she gets along well with her step-father. Those facts were disputed by the child, who also testified that she desired to live in Gadsden with the Wagnons.
We now consider the applicable law. A natural parent has a prima facie right to the custody of his or her child but that right may be forfeited. A prior judgment awarding custody of a child to another rebuts any presumption which favors the natural parent and places upon the natural parent the burden of proving that a change in custody is necessary to promote the child's best interest, which is the polestar in each case and which must be determined from the particular facts involved. While the fitness of a natural parent is a factor to be considered, it does not automatically entitle that parent to custody of the child. Simpson v. Gibson, 420 So.2d 782
(Ala.Civ.App. 1982); Willette v. Bannister, 351 So.2d 605
(Ala.Civ.App. 1977). These cases also re-echo the ore tenus
rule that, when a trial court hears the evidence, its decision is presumed to be correct and cannot be altered upon appeal unless it was so unsupported by the evidence as to be palpably wrong.
We are fully aware that in some respects the learned trial court expressed an opinion as to the law which differed somewhat from the above. However, those expressions from the bench were made prior to the last three hearings and almost three months before the rendition of the final judgment, which was totally silent in that regard. Accordingly, we cannot ascertain whether correct or incorrect rules *Page 186 
of law were applied to the facts by the circuit court in deciding and rendering its final decisions. We will not guess a trial court into error under those circumstances. In any event, we will apply the above law to the facts to ascertain if the grant of custody to the mother was proper or erroneous, for if a trial court reaches a correct result, it is immaterial that a wrong reason was given or that erroneous law may have existed in the mind of the trial judge. Boyd v. Brabham, 414 So.2d 931
(Ala. 1982); Gamble v. Gamble, 363 So.2d 790 (Ala.Civ.App. 1978).
We have read and studied the entire record. It conflicts in many areas. The evidence was such that it would have upheld either a custody award to the mother or a judgment continuing the temporary custody in the Wagnons. The trial court, who saw and observed the witnesses, was peculiarly situated so as to resolve and determine the factual questions. The mother had apparently rehabilitated herself and presently is a fit parent. Issues as to the care and treatment of the child by the Wagnons and as to the best interest of the minor were presented by the mother's petition for custody. Factual questions in that regard were presented by the conflicting evidence and the issues were determined by the trial court in a manner which was favorable to the mother. We are factually bound by that implied determination upon those matters. Credible evidence was presented which supported the trial court's decisions. Tendencies of the testimony were that a material change in the circumstances of the parties had occurred since the 1978 temporary custody order of the juvenile court and the trial court did not abuse its discretion in awarding the daughter's custody to the mother. The trial court was not palpably wrong and we have no right to change the determination of the circuit court, for to do so would constitute an unauthorized substitution of our judgment upon contested factual matters for that of the trial court.
While we have responded to the merits of the case out of deference to most able counsel for both parties, the judgment of the trial court must be affirmed for another reason. The child testified at length on two different dates in chambers with the child, the trial judge, the court reporter, and the attorneys being the only persons present. That testimony is included in the record. However, the transcript reveals that, after much evidence had been presented, on June 1, 1982, the trial court conferred with the child in chambers and nothing about what was related to the trial court at that time by the child appears in any manner in the record. Although the girl testified in some detail on two subsequent trial dates, we cannot adjudge that the June 1, 1982, discussion with her by the trial court did not affect the final judgment. Since that evidence is not before us, we are required to presume that the missing information so gained by the trial court from the child on that occasion was sufficient evidence to sustain the final judgment. A factual conclusion reached by a trial court under those circumstances is immune from review on appeal. Ruck v.Ruck, 265 Ala. 29, 89 So.2d 274 (1956); Yates v. Yates,428 So.2d 105 (Ala.Civ.App. 1983).
The judgment of the circuit court is affirmed.
The foregoing opinion was prepared by Retired Circuit Judge EDWARD N. SCRUGGS while serving on active duty status as a judge of this court under the provisions of § 12-18-10 (e) of the Code of Alabama of 1975 and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur. *Page 187